# GRAFTON,

## DECEMBER TERM, A. D. 1854.

---

## KENNISTON & a. v. HAM.

Where an action of assumpsit was brought to recover the value of certain tim-
ber, cut by the defendant upon lands of the plaintiffs, under a contract of their
agent, and converted to his use, which timber, by the terms of the contract,
was to be taken and paid for at such price per thousand as H. & S. should
say it was worth on the stump; it was *held* that a revocation, by the defen-
dant, of the authority conferred upon H. & S. to determine the value of the
timber, would form no defence to the action.

Where the agent of the plaintiffs, who were plaintiffs in common, with others, of
certain lands, having no authority from the other tenants, sold to the defen-
dant a quantity of timber standing upon the lands, which he cut and convert-
ed to his use, it was *held* that an action of *general indebitatus assumpsit* would
lie to recover the value of their interest in the timber.

ASSUMPSIT, upon an acount annexed to the writ for $250,
the items being,

1853.
March 15.   To 200,000 spruce timber, at 75 cts.... $150,00
            To   10,000 ash timber, at $10,........100,00

taken from land in Ellsworth.

The second count in the writ was for goods sold and de-
livered.   The general issue was pleaded.

The plaintiffs introduced evidence tending to show that
in January, 1853, the defendant, having cut some spruce
timber upon certain wild lands in Ellsworth, which the
plaintiffs claimed as theirs, and wishing to cut more, agreed

with the agent of the plaintiffs to pay them for all he had and might cut that winter, so much per thousand, as John Horner and Sim Sawyer should say it was worth on the stump.

On the next day, after making this agreement, Horner and Sawyer went upon the premises, and gave it as their opinion that the lumber was worth seventy-five cents per thousand on the stump. They informed the defendant what their opinion was, on the same day, and also, about a week afterwards, gave the agent of the plaintiffs the same information. After this the defendant went on and cut a considerable amount, and drew away, in all, 128,000.

The defendant contended that the plaintiffs were not the owners of the land where the timber was cut; and further, that if they had any interest in the premises, they were only tenants in common with others; and with a view to raise the question of title to the premises, he offered to show in whose possession the land was, and also that the plaintiffs are only tenants in common with others; and he contended that the plaintiffs could not, therefore, maintain the action alone. The court ruled the evidence inadmissible, to which the defendant excepted.

The defendant also contended that whatever agreement he made with the plaintiffs' agent, to leave the matter to Horner and Sawyer, to fix the value of the lumber, was revoked by him before they went upon the premises; and for this purpose he offered to show that before Horner and Sawyer went upon the ground, he notified them, Horner and Sawyer, that he would not abide by their decision, and that after they came back he also told them that he would not abide by their judgment. He also offered to show that, in consequence of what he said to Horner and Sawyer, they went upon the ground, not to make a decision between the parties, but merely at his suggestion, and to express their opinion to him, and that they did not regard their opinion as any way binding upon the parties; and, further, that

when the men informed the plaintiffs' agent as aforesaid, about a week after they had expressed their opinion to the defendant, what their opinion of the value was, they told him that the defendant said he would not abide by their decision. But he did not offer to show any notice of revocation, other than that sent by the men, a week after they had expressed their opinion to the defendant. The court ruled the evidence inadmissible, as showing any defence to the action.

It did not appear that any one, except the plaintiffs, ever claimed the timber.

A verdict was taken, by consent, for the plaintiffs, on which judgment was to be entered, or the verdict to be set aside and a new trial granted, as the opinion of this court should be upon the case.

*H .A. Bellows*, with whom were *Leverett* and *Quincy*, for the plaintiffs.

The case is that the plaintiffs claimed the land and licensed the defendant to cut timber, at a price to be fixed by Horner and Sawyer, and they did fix it, and the defendant thereupon cut off 128,000 of timber therefrom, and drew it away.

The contract, then, was so far executed that nothing remained to be done but to pay the price.

It does not come within the operation of the statute of frauds, but is like the case of the sale of standing crops, in which case, the crops being taken, *indebitatus assumpsit* can be maintained. *Moore* v. *Ross*, 11 N. H. Rep. 547, and many cases cited ; *Goldthwait* v. *Kempton*, 13 N. H. Rep. 449.

Under the circumstances, the defendant could not show that the plaintiffs were tenants in common, with another, of the land, for that would not avail him.

Had the defendant bought the whole land with warranty, the want of title would not have been a good defence, with-

out showing an eviction, for he must show a breach of the warranty ,and that can only be by showing an ouster. 2 Greenl Ev. § 244 and note; *Loomis* v. *Bedel*, 11 N. H. Rep. 74.

If it be regarded like a sale without warranty, then, in the absence of fraud, the failure of title would be no defence. *Perkins* v. *Bumford*, 3 N. H. Rep. 522.

If this be regarded as a sale of chattels, numerous authorities hold that the same principles apply. 2 Kent's Com. 470–473, and cases cited.

But if the law is otherwise in respect to personal property, and this be regarded as the sale of such property, and even an implied warranty of title, the defendant is in no condition to show a want of title; because he has not rescinded the contract, but still holds the property under it. 2 Kent's Com. 473; Story on Contracts §§ 451, 414; Story on Sales § 203; *Perley* v. *Balch*, 23 Pick. 283;

Story on Contracts, § 414, speaking of sales of personal property, says: " But if the vendee still retain undisturbed possession of the property sold, and *a fortiori* if no claim be made against him by an adverse party, he cannot plead want of title in the vendor, in defence of an action for the price."

" Where goods have been sold and delivered, and the purchaser has not been molested in the enjoyment of the property, and no other claimant has appeared, the purchaser is bound to fulfil his contract, and cannot defend himself against an action for the price by showing how the vendor obtained his title, and that the title is defective." *Kennebec Log Driving Co.* v. *Burrill & a.* 6 Shep. 314, and authorities quoted.

" Want of title in the vendor of personal property is no defence to an action brought for the recovery of the purchase money, where there has been no recovery by the owner against the purchaser." *Case* v. *Hall*, 24 Wend. 101, marginal note.

If it be said that the defendant did not cut this timber under the contract, but as a mere trespasser, we answer that he had the license, and cut the timber without giving any notice that he did not cut it under the agreement.

To be sure, he offered to prove that he told Horner and Sawyer he should not abide their estimate, and that they afterwards told the plaintiffs' agent what the defendant said.

But he did not offer to prove that he directed them to give such notice, nor did he offer to prove that he notified the plaintiffs that he should not cut under the license.

*N. B. Bryant* and *Burrows,* for the defendant.

A submission may be revoked at any time before award made. 6 N. H. Rep. 36, and cases cited; 10 Vermont Rep. 91; *Morton* v. *Chapman,* 1 Alabama Rep. 278; *Clement* v. *Hadlock,* 13 N. H. Rep. 186.

Sometimes a revocation may be inferred. *Peters* v. *Craig,* 6 Dana 307.

Authorities directly in point are Kyd on Awards 29; *Rochester* v. *Whitehouse,* 15 N. H. Rep. 472; Story on Agency, § 463.

WOODS, J. The defendant cut the timber in question upon lands claimed by the plaintiffs, and after having cut a portion of it, he, wishing to cut more, agreed with the agent of the plaintiffs to pay them for what he had cut and what he should cut, so much per thousand, as Horner and Sawyer should say it was worth on the stump. After this arrangement, the defendant went on and cut a considerable quantity more, and drew away the whole, amounting to 128,000 feet in all. One ground of answer to the plaintiffs' action, relied upon by the defendant at the trial was, that he revoked the authority conferred upon Horner and Sawyer, to determine the value of the timber, and that, therefore, although they expressed their opinion upon the ques-

tion, still they did not intend it as binding upon the parties. The court ruled that the evidence offered to show this state of fact was inadmissible, on the ground that it did not show any defence to the action. The question is whether this ruling was correct.

The defendant agreed to take the whole timber cut by him, and to pay for it, and was permitted by the plaintiffs to take, and actually did take it into his possession, and convert it to his own use. He took it and hauled it away under a contract for the purchase of it. And the plaintiffs, if the sole owners of it, would clearly be entitled to recover the value of it, as for goods sold and delivered, unless the right be defeated upon the ground assumed by the defendant. But that ground of answer cannot avail him. The defendant has taken to his use and benefit the timber cut by him, and the plaintiffs have done and been ready to do every thing stipulated to be done by them, to entitle them to a fair compensation for it. If the price or value of the timber was not determined in the manner agreed upon by the parties, it was not the fault of the plaintiffs, but of the defendant. The defendant cannot set up the fact of the failure of the parties to obtain the judgment of Horner and Sawyer, as to the value of the timber, in defence of this action when that was occasioned by the defendant himself. He cannot avail himself of his own wrongful act, in violation of his own agreement, for this purpose. Here was a sale by the plaintiffs to the defendant, and a delivery of the timber, which will render him liable for the fair value of the interest which he acquired by the sale, notwithstanding the alleged revocation, on his part, of the authority given to Horner and Sawyer to determine the value of it. The revocation, then, if fully shown, would form no bar to a recovery by the plaintiffs, and the rejection of the evidence of the fact, offered by the defendant, could in no way prejudice his rights, or furnish sufficient ground to sustain a motion for a new trial. A further ground of answer to the ac-

tion, relied upon by the defendant was, that the plaintiffs were tenants in common, with certain other persons, of the premises on which the timber was cut, and had no other interest in the timber than what would arise to them upon that state of fact, and that being tenants in common only of the land, and, consequently, of the timber, they could not maintain this action in their names alone, without joining the other tenants in common in the action. The evidence offered by the defendant, to show this state of fact, was ruled out, as furnishing no answer to the plaintiffs' action.

Upon the case, it is proper to assume that the plaintiffs were tenants in common, with others, of the lands upon which the timber was cut. That was the fact offered to be proved, and being ruled out, it must, for the decision, be considered as proved, and have the effect of the established fact. Was that a sufficient answer to the action? That is the exact question for consideration.

The first count in the declaration is upon an account annexed. The second is, in terms, for goods sold and delivered.

Both counts, then, are, in legal effect, counts for goods sold and delivered. *Messer* v. *Woodman*, 2 Foster's Rep. 176.

To entitle the plaintiffs to recover, it must appear that the contract was with them alone, and not with them and others, jointly; that they are the only persons with whom the contract was made, or in whom the legal interest in the contract vested at the time it was made. For all the parties in whom the joint legal interest in a contract resides, must join in the action. The nonjoinder of one of the promisees having such interest, would be a ground of nonsuit. 1 Saund. on Pl. & Ev. 143. The proper inquiry in such a case is, in whom is the legal interest in the contract? It has been decided that where an express contract has been made with one partner only, and the defendant did not, at the time of the contract, know that there were other part-

ners, that one may sue alone. In such case, it has been decided that the action lay either by the party with whom the contract was actually made, or in the names of all the partners interested. *Skinner* v. *Stocks*, 4 Barn. & Ald. 437; *Parsons* v. *Crosby*, 5 Esp. 199.

In general, an action on a contract, express or implied, must be brought in the name of the party in whom the legal interest in the contract is vested. 1 Chitty's Pl. 2.

And Chitty says " where the contract is made with several persons, whether it be under seal or in writing, but not under seal, or by parol, if the legal interest be joint, they must all, if living, join in an action in form *ex contractu* for the breach of it." 1 Chitty's Pl. 8.

Where the *legal interest* and *cause* of action of the covenantees are several, each may and should sue separately for the particular damages resulting to him individually, although the contract be in terms joint. 1 Taunt. 7; 1 Chitty 10; Hammond on Parties to Actions 19.

In Hammond on Parties to Actions, page 6, it is said that " to the validity of simple agreements other than in certain cases of negotiable securities, a consideration is essential, of which distinct proof must, to enforce them, usually be adduced; and where this rule applies, the legal interest in the simple contract resides with the party from whom its consideration moves. The rule deciding with whom resides the legal interest of implied contracts, is obviously similar to that which holds in express agreements." Hammond on Parties 11.

There are a few cases stated in Hammond on Parties, page 20, to show who are considered in law as having the legal interest in contracts, whether the interest belongs to several jointly, or separately to each. It is said there " if its consideration has moved from all jointly, all are jointly interested, notwithstanding each may derive a separate benefit from its performance, though they may, perhaps, sue separately when neglected."

Again, " if the consideration has moved separately from each, still, if the beneficial interest is joint, the legal interest is joint in all." And again, " if the consideration and beneficial interest are both several, the contract is several to each." The illustration of the first position or rule is given thus: " where some cattle of B. and some of C. being distrained, they jointly paid A. £10, to procure to each a return of his cattle, and on A's neglect, B. and C. were allowed to join in suing him, on the ground that the consideration was joint, it not being known how much of the £10 the one gave or how much the other."

The second rule stated is illustrated by supposing A. and B. to give C. £5 apiece to go to L. And the third, by the case where A. and B. give C. £5 each, to serve A. one month, and B. another.

The general principle of law to be deduced from the authorities undoubtedly is, that where there is a contract, and the legal interest therein is joint in several, they should all join in one action, in form *ex contractu*, for a breach of it; but when the legal interest is several in each, the action should, in general, be several.

The substantial ground assumed in the defence, in the present case is, that the other tenants in common of the land, and, consequently, of the timber in question, should have been joined as co-plaintiffs in the action. That position is to be sustained, if they appear upon the facts reported, to have a joint legal interest in the contract with the plaintiffs. But we are of the opinion that they are not shown to have such joint interest.

The present plaintiffs are tenants in common, with others, of the timber. That fact, alone, authorized them to sell and convey only their shares or interest in the common property. They are not shown to have had any special authority to sell and dispose of the interest of their co-tenants in the property. The party who acted in making the contract was the agent of the plaintiffs only, and did not assume to

be the agent of the other co-tenants. The interest of the plaintiffs, then, alone, is shown to have passed by the sale, and that alone furnished the consideration for the defendant's promise. And the promise was an express promise, and was made to the plaintiffs alone.

The other co-tenants, then, were interested neither in the consideration nor in the promise, and upon no principle or adjudged case found in the books, can they be said to have any legal interest in the contract.

They should not, therefore, have been joined in the action with the plaintiffs.

The opinion of the court is, therefore, that there must be

*Judgment on the verdict.*